Stephenson, J.
 

 The parties will be referred to herein as the city and the railroad company.
 

 Counsel for both parties'seem to be in agreement that their rights are fully determined by the construction of Section 8889, General Code.
 

 While this and cognate sections lend much color to the law involved in this case, we do not say at the outset that their proper construction is dispositive of the legal propositions herein involved.
 

 
 *307
 
 The city states that the railway company’s property was assessed in proportion to the benefit it would receive from the street improvement.
 

 The railway company insists that its property was not and is not in any wise benefited by the street improvement.
 

 Consequently, we have the issue whether, as a matter- of fact, the railway company’s property was and is so benefited.
 

 The city insists that the railway company does not raise this question, because the Court of Appeals made no finding of fact to the effect that the railroad company’s property was not benefited by the improvement and the railroad company took no exception to such finding of fact. The city was content with the finding of fact made by the Court of Appeals, and it took no exception.
 

 It must be conceded that the Court of Appeals did not find in so many words that the railroad company’s property was not benefited by the improvement in question. There being no specific finding on this question of fact, the following question asserts itself: Are the facts found by the Court of Appeals tantamount to a finding that the railway company’s property was not benefited by the street improvement?
 

 The facts found by the Court of Appeals are as true as gospel, so far as this court is concerned. Each and both parties, by failure to except to them, have placed upon them their stamp of absolute approval.
 

 What did the Court of Appeals find along this line? It found that the right of way of the railroad company, with its tracks thereon, intersected Highland avenue, the street sought to be improved, at a substantial right angle; that at that time Highland avenue was an unimproved, dirt street; that such right of way at the time of assessment was elevated to the extent that a clearance was made for traffic on Highland avenue by means of the subway under it, by reason of
 
 *308
 
 proceedings had by the city in 1909, under favor of statutory law, to eliminate the grade crossing at that point. The cost incident to this elimination was paid by the city and railroad company jointly, and it was at that time agreed by and between the city and the railroad company that the railroad company would keep and maintain the bridge and its abutments and that Highland avenue and its approaches would be kept and maintained by the city.
 

 This agreement was kept until 1930, when the city improved Highland avenue, including that portion of it passing under the railroad company’s tracks, by concreting the roadway and constructing sidewalks and sewer drops. These proceedings were in accordance with law. The city’s legislation provided that the cost of this improvement, less the city’s portion, should be assessed against the lots and lands abutting upon such improvement, in proportion to benefits received therefrom.' All proper steps were taken and notices given. An equalizing board was duly constituted, and such board equalized the cost of the improvement and determined the amount that should be assessed against each abutting lot or tract of land. The sum of $494 was assessed against the right of way of the railroad company. A protest was made by the railroad company. Pour reasons were assigned why the railroad company should not be assessed by the city for the improvement in question, namely:
 

 1. No benefits were conferred on the railroad company’s property by reason of the improvement.
 

 2. By the agreement entered into with the city, the railroad company was released from all assessments for the improvement of Highland avenue at the intersection in question.
 

 3. That the railroad company was absolved from liability to assessment by'virtue of Section 8889, General Code.
 

 4. That the railroad company had not been notified
 
 *309
 
 of the assessment as provided by Section 3895, General Code.
 

 Notwithstanding the protest, the city and county authorities were proceeding to take the necessary steps to make the assessment a lien against the railroad company’s lands when they were enjoined.
 

 The railroad company insists that it is not an abutting owner. We cannot subscribe to this contention. To do so we would have to depart from the time-honored maxim that, “He who owns the soil, owns it up to the sky.”
 
 (Cujus est solum ejus est usque ad coelum.)
 

 We are unable to say that the facts found by the Court of Appeals are in effect a finding that the railroad company’s property was not benefited. That court in all probability felt that the question as to whether or not the railroad company’s property was benefited was a question to be determined by the city council rather than the courts, as hinted in
 
 Hayes
 
 v.
 
 McMaken, Treas.,
 
 78 Ohio St., 412, 85 N. E., 1125.
 

 We come now to the one remaining question: Does Section 8889, General Code, grant the railroad company absolution from assessment, under the facts as found by the Court of Appeals ?
 

 Why was Section 8889, General Code, and its kindred sections enacted into law?
 

 It early became patent to all that a railway grade crossing in a city was a continuous menace to life and limb. Our legislators for a number of years were hesitant to attempt by legislation to eliminate grade crossings, as they felt that they were treading on dangerous ground. To accomplish the result sought, it was necessary to invade vested property rights. It was a question as to how this could be done without at least stepping upon the toes of our Constitution.
 

 A way out was found through the exercise of the police power of the state. The elimination of grade crossings in cities was unquestionably conducive to
 
 *310
 
 public safety. The Legislature ultimately ventured upon this dangerous ground. Such action was upheld by the courts as being in perfect harmony with Section 1 of our Bill of Bights. Thereupon the exercise of the police power was delegated to our cities .and villages.
 

 Under this delegation of power the city of Bucyrus proceeded to eliminate the grade crossing in question, assess the cost thereof, and provide for the maintenance of the property under the new conditions.
 

 Our General Assembly has not been stingy in its legislation with reference to grade crossings. Sections 8863 to 8907, inclusive, General Code, are devoted exclusively to grade crossings.
 

 It is assumed that the city saw to it that the railroad company paid sixty-five per cent, of the cost of elimination of this crossing, as .provided by Section 8883, General Code. It is likewise fair to assume that at some time prior to the elimination of the grade crossing the railroad company complied with Section 8843, General Code, by building the original crossing over Highland avenue, keeping it in repair, and by constructing and keeping-in repair good and sufficient sidewalks for the full width of its right of way on Highland avenue.
 

 Take a resume of the moneys invested in this crossing by the railroad company. It paid one hundred per cent, of the original cost of construction, plus sixty-five per cent, of the cost of elimination, plus one hundred per cent, of the cost of maintenance prior to the elimination of the crossing, plus the keep and maintenance of the bridge and abutments, as provided by Section 8889, General Code.
 

 The railroad company has kept faith with all these requirements, and now the city wants it to pay $494 more for the improvement of Highland avenue along its right of way.
 

 There is no question but that the city proceeded regularly and lawfully to levy this assessment against the
 
 *311
 
 railroad company’s right of way, in pursuance of Sections 3812
 
 el seq.,
 
 General Code.
 

 Was it the legislative intent that under circumstances such as exist in this case the railroad company should be assessed and compelled to pay for the improvement of Highland avenue ? Highland avenue was originally a dirt street, and the railroad company’s roadbed ran across the roadway. In other words, the tracks were laid and maintained in the avenue proper. The city was thereby carrying a servitude for the railroad company, notwithstanding the railroad company had paid for and was maintaining the entire area of its servitude. A dangerous condition was thereby created, and the city, in the exercise of its police power, determined to eliminate this condition, and it did. Highland avenue was relieved of the servitude. The railroad tracks were taken from the roadway of Highland avenue, elevated presumably to the height required by the city, and a clearance for traffic, such as the city required, was provided by a subway.
 

 The General Assembly, in providing the means whereby cities may rid themselves of railroad crossings, uses the words “eliminate” and “abolish” interchangeably. These words have no hidden or uncertain meaning. The primary meaning of eliminate is “to expel,” and expel means to “throw out.” The primary meaning of abolish is “ to do away with wholly. ’ ’
 

 Could the city wholly do away with this grade crossing and at the same time hold the railroad company’s property liable to assessment? The liability arose by reason of the grade crossing. The grade crossing is gone, “wholly done away with,” and the statute has made an arrangement whereby the property of the railroad company and the street at the site of the former grade crossing shall be taken care of.
 

 The crossing was eliminated. The street and the railroad were divorced. The street no longer furnished a foundation for the railroad company’s tracks. It
 
 *312
 
 mattered little to the railroad company now as to what the city did with Highland avenne. It could be converted into a boulevard, or degenerate into an alley, and the railroad company would not be affected by the transition so long as the city performed its statutory duty of maintaining and keeping its approaches in repair. The only servitude the city carries for the railroad company at the intersection at the present time is such as is created by directing a highway through a short tunnel.
 

 The city has resurfaced Highland avenue. At this intersection vehicular traffic does not have to trundle over railroad tracks. It is the same old Highland avenue in a new dress.
 

 Counsel for the city attach much importance to the language adopted by the General Assembly in the enactment of Section 8889, General Code, which provides: “After the completion of the work the crossings and approaches shall be kept in repair as follows: When the public way crosses a railroad by an overhead bridge, the cost of maintenance must be borne by the municipality. When the public way passes under the railroad, the bridge and its abutments shall be kept and maintained by the railroad company, and the public way and its approaches be maintained and kept in repair by the municipality in which they are situated.”
 

 It is insisted that if the General Assembly in the enactment of Section 8889, General Code, was endeavoring to absolve the railroad company’s property from assessment for the improvement of the public way, it could have used the language: “And the public way and its approaches be
 
 improved,
 
 maintained and kept in repair by the municipality * *
 

 It is conceded that the Legislature uses the language of the individual. When it uses an ordinary, usual word, it seeks to convey the ordinary and usual meaning of that word; and courts, in the construction of the statute, will give to the word its usual and ordinary
 
 *313
 
 meaning unless from the construction of the statute as a whole the Legislature intended to enlarge or restrict the meaning of the word in question.
 

 A public way cannot be maintained without improving its existing condition. If a public way is improved, some of the old conditions are maintained and new ones added.
 

 If the city can as a matter of law assess the railroad property for the improvement of Highland avenue under these circumstances, it could just as well assess it if the positions were reversed, notwithstanding under such a condition the entire cost of maintenance is charged by statute to the municipality.
 

 It is doubtful whether or not under the present state of the pleadings the question of the applicability of the statute of limitations is raised herein. The Court of Appeals seemed to think it was, as that court passed on the question; and we are in accord with that holding, to the effect that this action could be brought at any time within the year as provided by Section 12075, General Code.
 

 This ruling disposes of the question of waiver.
 

 It is the further holding of this court that by virtue of Section 8889, General Code, the property of the railroad company is forever exempted from assessment for the specific improvement herein complained of, and the judgment of the Court of Appeals is affirmed'accordingly.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Jones, Matthias, Bevis and Zimmerman, JJ., concur.