ADAMS, APPELLEE, *v.* LAMBERT, APPELLEE;
THE CLYDE KRAUT CO., APPELLANT.

(No. 471—Decided April 23, 1951.)

*Messrs. Dewey & Dewey,* for appellee Matilda Adams.

*Messrs. Stout & Stout,* for appellee Richard Lambert.

*Messrs. Culbert, Hyzer & Culbert,* for appellant.

CONN, J. In the trial court a verdict for $2,000 was rendered for the plaintiff against defendant The Clyde Kraut Company, and at the same time the jury rendered a verdict in favor of the defendant Richard Lambert. A judgment was entered on the verdict against the defendant company, from which it appeals on questions of law.

In her amended petition, plaintiff stated that on or about November 6, 1948, she contracted with defendant Richard Lambert, a poultry dealer in Fremont, Ohio, to kill, dress and deliver about 500 tur-

keys to the defendant company, a corporation doing business as a cold storage warehouse company at Clyde, Ohio; that defendant Lambert killed, dressed, and delivered the turkeys to defendant company; that on or about November 8, 1948, plaintiff contracted with defendant company to freeze, keep and store such turkeys at an agreed price per month per hundred pounds; that the turkeys were delivered to defendant company on or about November 8, 1948; and that subsequently, to wit, on or about December 10, 1948, it was discovered that the turkeys had spoiled and become unfit for human consumption and plaintiff was compelled to sell the turkeys for the sum of one cent per pound.

Plaintiff alleged further that the loss and damage she sustained was directly and proximately caused by the negligence of the defendants; that defendant Lambert was negligent in placing the turkeys in sealed cellophane bags before body heat had been removed from them; that they were not properly chilled before delivery to defendant company for cold storage; that defendant company was negligent in failing to inspect the turkeys to see whether the body heat had been removed and in failing to chill or sharp-freeze them before attempting to freeze them; that defendant company stacked the turkeys in a large pile so that cold air could not circulate in and around them and the turkeys on the inside of the pile were not properly frozen; and that the defendant company failed to inspect the turkeys from time to time to ascertain whether they were being properly frozen, and marketable as a first class food product.

The defendant company demurred to plaintiff's amended petition on the ground of misjoinder of parties defendant and misjoinder of separate causes of action against the defendants. This demurrer was

overruled by the trial court and defendant company filed its answer admitting that it operates a storage plant and that plaintiff stored turkeys in its warehouse. The admissions were followed by a general denial and allegations charging plaintiff with contributory negligence, which it is alleged was the proximate cause of her loss. The alleged contributory negligence of plaintiff was denied in her reply.

The defendant company moved for judgment on the opening statement of counsel, at the close of plaintiff's evidence, and at the close of all the evidence. It moved also for a directed verdict on the ground that plaintiff assumed the risk and was guilty of negligence as a matter of law. It moved also for a judgment *non obstante veredicto* and for a new trial, all of which motions were overruled. The actions of the trial court in overruling the several motions and in overruling the demurrer of defendant company on the ground of misjoinder of parties and misjoinder of separate causes of action are assigned as error, together with an assignment that the verdict is against the manifest weight of the evidence.

We will consider first the alleged error in overruling the demurrer of defendant company to plaintiff's amended petition. It is contended by defendant company that on the face of the amended petition it appears that plaintiff had separate contracts with defendants, by the terms of which defendants were obligated to perform separately certain acts, each defendant having certain things to perform unlike those to be performed by the other; that there were no joint acts to be done by defendants; and that each proceeded as an independent contractor. On this premise, it is urged that there is a misjoinder of parties and ''separate causes of action against the several defendants.''

These considerations appear to overlook the nature

of the cause of action set up in the amended petition. This is not an action *ex contractu* as contended by defendant company. It is an action for damages, sounding in tort. A majority of the court is of the opinion that the amended petition shows on its face that the negligence of defendant Lambert was closely related to and merged with the negligence of defendant company, the proximate result of which produced a single and indivisible loss. It is not necessary that there be concert of action on the part of tort-feasors to make them jointly and severally liable when the loss is the proximate result of their concurring negligence.

The courts favor the adjudication of all issues arising out of the same subject matter in one action and the avoidance of a multiplicity of suits, unless a party is prejudiced by such procedure. It is not apparent how defendant company sustained any prejudice by the joinder of which it complains. If the defendants were severally as well as jointly liable for alleged tortious misconduct, plaintiff could have brought her action separately against each, and a judgment against one could not be set up as a bar to any later action, although plaintiff could have but one satisfaction of her damages.

Plaintiff sustained a single loss. This loss resulted proximately from the alleged tortious misconduct of defendants, as already pointed out. Were plaintiff to bring separate actions on the theory of nonjoinder and obtain a judgment and satisfaction thereof in one action, might not the judgment and its satisfaction be a bar to her action against the other defendant, notwithstanding she did not receive full compensation for her loss? At least, under the more liberal rules of joinder that now prevail in Ohio, in comparison with the common law and the early cases both before and since the adoption of the Code of Civil Procedure (51

Ohio Laws, 57), plaintiff may not be required to run the risk or incur the expense entailed in bringing separate actions and thereby be deprived of such benefit as may accrue to her in proceeding against the defendants as joint tort-feasors. Although not acting in concert, the defendants are alleged to have acted in such close relationship to each other that their tortious acts inseparably merged to produce plaintiff's loss and damage.

Judicial opinion is divided as to the necessary elements of a joint tort. Some cases indicate that concert of action is a necessary element where a single injury results from separate acts. However, this test does not appear to be the present rule in Ohio. We call attention to *Wery* v. *Seff*, 136 Ohio St., 307, 25 N. E. (2d), 692. In that case, plaintiff sustained damages through the alleged combined negligence of defendants, who were a father and his minor son of the age of 15 years. The father had entrusted his motor vehicle to his son who was under the age specified in the statute. Each was charged with negligence. Demurrers were interposed by defendants on the ground of misjoinder of parties defendant and causes of action. The demurrers were sustained and the petition dismissed by the trial court. On appeal, the judgment was reversed by the Court of Appeals, and its judgment was affirmed by the Supreme Court.

Defendants contended in that case, as defendants do in the instant case, that tort-feasors may be joined only when they act in concert. However, in Ohio it appears that "concert in the execution of a common purpose" is no longer the essence of joint liability in tort, as was held in *Stark County Agricultural Society* v. *Brenner, An Infant,* 122 Ohio St., 560, 172 N. E., 659, and earlier cases. Judge Zimmerman, in *Wery* v. *Seff, supra,* in commenting on the *Stark County Ag-*

*ricultural Society* case, said the rule therein "is too narrowly stated." We quote paragraph five of the syllabus of *Wery* v. *Seff, supra,* as follows:

"When two or more persons, under circumstances creating primary accountability, directly produce a single, indivisible injury by their concurrent negligence, they are jointly and severally liable, even though there is no common duty, common design or concerted action."

See, also, *Blanton, Admr.,* v. *Sisters of Charity,* 82 Ohio App., 20, 79 N. E. (2d), 688; *Micelli* v. *Hirsch,* 83 N. E. (2d), 240; 30 Ohio Jurisprudence, 769, Section 46.

Defendants filed separate answers, neither of which made objection to misjoinder of parties defendant or misjoinder of separate causes of action. Neither defendant moved to require plaintiff to elect at the close of plaintiff's case or at the close of all the evidence. If such motions were made, they could not have been properly granted, as neither the amended petition on its face nor the evidence disclosed inconsistent causes of action. *Frederickson* v. *Nye,* 110 Ohio St., 459, 144 N. E., 299, 35 A. L. R., 1163; *Roberts* v. *Lee,* 72 Ohio App., 235, 51 N. E. (2d), 108.

Plaintiff could have brought an action on the contract she had with defendant Lambert, and a separate action on the contract with defendant company. In that event, in each action plaintiff as bailor would have had the burden of proving delivery of the turkeys and failure of their redelivery in good condition on demand. On failure to redeliver, the bailee in each case would have had the duty to go forward with the evidence. Having brought her action jointly in tort, she thereby made her election and was obliged to establish her claim of negligence by a preponderance of the evidence against one or both of the defendants. *Ag-*

*ricultural Ins. Co.* v. *Constantine,* 144 Ohio St., 275, 58 N. E. (2d), 658; 5 Ohio Jurisprudence, 124, Section 30.

It may be observed that the rule of nonjoinder as applied in those cases wherein tort-feasors incur as to a third party a primary and secondary liability, or where liability arises by virtue of the doctrine of *respondeat superior,* has no application in the instant case. *Clark* v. *Fry,* 8 Ohio St., 358, 72 Am. Dec., 590; *Village of Mineral City* v. *Gilbow,* 81 Ohio St., 263, 90 N. E., 800, 25 L. R. A. (N. S.), 627; *Larson* v. *Cleveland Ry. Co.,* 142 Ohio St., 20, 50 N. E. (2d), 163; *Albers, Admr.,* v. *Great Central Transport Corp.,* 145 Ohio St., 129, 60 N. E. (2d), 669.

The majority of the court concludes that the assignment of error predicated on misjoinder should not be sustained.

The record discloses that there is credible evidence supporting one or more of the specifications of negligence on the part of defendant company and it does not appear that the verdict is manifestly against the weight of the evidence.

We have considered the remaining assignments of error and are of the opinion that they should not be sustained.

The focal point of these assignments is the claim of defendant company that the turkeys were not properly killed in preparation for storage and were not in good condition when delivered to defendant company. On this issue, there is some conflict in the evidence. It is undisputed, however, that the turkeys which were delivered in cartons and stacked or ricked by defendant company preparatory for freezing in a manner permitting the circulation of air were in good condition upon redelivery. On the other hand, the evidence shows or tends to show that the turkeys delivered to

defendant company in cellophane bags were stacked or piled against a wall in the storage room in such manner as to prevent the circulation of air in and around them, which tended to prevent prompt freezing.

The evidence shows that defendant Lambert employed the same method in killing, cleaning and preparing each of the turkeys for delivery to the defendant company, excepting only the type of container, and that they were delivered promptly, almost immediately following preparation.

On the whole record it appears that a fact issue was presented to the jury and determined without prejudicial error, and that the trial court properly overruled the motions for judgment in favor of defendant company and the motion of defendant for a new trial.

*Judgment affirmed.*

CARPENTER, J., concurs.

FESS, J., dissenting. In her amended petition, plaintiff alleged that on November 6, 1948, she contracted with the defendant Lambert to kill, dress and deliver her turkeys to the Kraut company's warehouse, and that Lambert was guilty of negligence in failing to properly chill the birds before delivery to the Kraut company.

She alleged also that on November 8, 1948, she contracted with the Kraut company to freeze, keep and store the turkeys, and that the company was negligent in six separate specifications of negligence, including failure to inspect, failure to chill, failure to quick freeze, and in stacking unchilled and unfrozen turkeys in a large pile.

Defendant's demurrer to the amended petition for

·misjoinder was overruled. At the close of plaintiff's case, defendant moved for dismissal on the ground that there was a misjoinder of parties defendant. At the close of the entire case, the defendant moved for a directed verdict upon the evidence, but did not renew its objection as to misjoinder. Among other grounds set forth in its motion for new trial, defendant set forth errors in overruling its demurrer for misjoinder of parties and separate causes of action. At no time did the defendant move the court to require the plaintiff to elect.

It appears upon the face of the petition that separate causes of action are improperly joined against separate defendants. Joinder of two or more defendants is proper only where, because of their relationship, concert of action or independent but concurrent action, each is vicariously responsible for the wrongful acts of the other or others to the extent of the entire damage. *Larson* v. *Cleveland Ry. Co.,* 142 Ohio St., 20, 50 N. E. (2d), 163; *Wery* v. *Seff,* 136 Ohio St., 307, 311, 25 N. E. (2d), 692; *Ader, Admr.,* v. *Blau,* 241 N. Y., 7, 148 N. E., 771, 41 A. L. R., 1216.

*Ader, Admr.,* v. *Blau, supra,* was cited with approval in *Larson* v. *Cleveland Ry. Co., supra,* pp 32, 33, and *O'Neill* v. *City of Cleveland,* 145 Ohio St., 563, 571, 62 N. E. (2d), 353.

In the *Ader case* joinder of independent causes of action for death of a child was attempted against one defendant for maintaining a dangerous picket fence and against a physician for negligence in treating the injuries. In 1935, the joinder statute of New York was amended to overcome the decision in the *Ader case* and thereafter, under the amended statute, joinder of defendants liable to a plaintiff on different causes of action was allowed if the claims arose from the same transaction or *series of transactions* and separate trial

of the causes of action involved common questions of law and fact. *Great Northern Telegraph Co., Ltd.*, v. *Yokohama Specie Bank, Ltd.*, 297 N. Y., 135, 76 N. E. (2d), 117, 119.[1]

The instant case involves separate transactions and distinctly separate obligations on the part of each of the defendants towards the plaintiff. No concert of action, no independent but *concurrent* action is asserted for which each defendant acted on behalf of or as representing the other, so as to become vicariously responsible for the wrongful act of each other to the extent of the entire damage to the plaintiff. Each is separately liable for damage arising out of his own negligence.

Although Section 11254, General Code, relating to joinder of plaintiffs, employs different language from that employed in Section 11255, General Code, relating to joinder of defendants, Section 11306, General Code, relating to joinder of causes of action, applies without distinction to plaintiffs

---

[1]Although Section 211 of the New York Code relating to joinder of defendants as amended does not in terms include "series of transactions," the phrase is included in Section 207 relating to joinder of plaintiffs. Section 258, which was formerly the counterpart of Section 11306, General Code, relating to joinder of causes of action, was amended in 1935 to permit joinder of two or more causes of action whether legal or equitable with provision for severance when required in the interest of justice. In reaching its decision in the *Great Northern case*, the court construed the amended Civil Practice Act as a whole and in the light of English decisions interpreted Section 211 as including "series of transactions." Section 211, as amended in 1937, permits joinder of defendants against whom the right to any relief is alleged to exist whether jointly, *severally or in the alternative*, and judgment may be given according to their respective liabilities. The sections of the New York Code relating to joinder were amended to conform to the rules of the Supreme Court of Judicature of England. New York decisions relating to practice and procedure have heretofore been regarded as persuasive in interpreting the Ohio Code of Civil Procedure, but decisions rendered since the liberalization of the New York procedure relating to parties are no longer helpful in construing the subject under the Ohio statutes.

and defendants. Therefore, decisions relating to misjoinder of several causes of action of separate plaintiffs apply with equal force to misjoinder of several causes of action against separate defendants. In *Ulmer* v. *Squire, Supt. of Banks,* 71 Ohio App., 369, 50 N. E. (2d), 178, this court held that separate owners of stock who pledged their respective shares as collateral security for a single note of a third party could not join as plaintiffs against another for conversion of their stock, since there was no such concert of relation between them as would create a single cause of action or support a single judgment. As authority, the opinion cites *Taylor* v. *Brown,* 92 Ohio St., 287, 110 N. E., 739.

As to misjoinder of several causes of action against separate defendants for a single injury, see *Morris* v. *Woodburn,* 57 Ohio St., 330, 48 N. E., 1097; and *Village of Mineral City* v. *Gilbow,* 81 Ohio St., 263, 272, 90 N. E., 800, 25 L. R. A. (N. S.), 627.

Later cases have injected the element of primary and secondary liability. *Stark County Agricultural Society* v. *Brenner, an Infant,* 122 Ohio St., 560, 172 N. E., 659[2]; *Albers, Admr.,* v. *Great Central Transport Corp.,* 145 Ohio St., 129, 60 N. E. (2d), 669; *Canton Provision Co.* v. *Gauder, a Minor,* 130 Ohio St., 43, 196 N. E., 634; *Kniess* v. *Armour & Co.,* 134 Ohio St., 432, 17 N. E. (2d), 734, 119 A. L. R., 1348; *Losito* v. *Kruse, Jr.,* 136 Ohio St., 183, 24 N. E. (2d), 705, 126 A. L. R., 1194; *Herron* v. *City of Youngstown,* 136 Ohio St., 190, 24 N. E. (2d), 708.

The distinction between concurrent and related torts

---

[2]In *Wery* v. *Seff,* 136 Ohio St., 307, 312, 25 N. E. (2d), 692, the court struck out the word "only" as appears in the third paragraph of the syllabus of the *Brenner case,* but in *Larson* v. *Cleveland Ry. Co.,* 142 Ohio St., 20, 50 N. E. (2d), 163, the word "only" again appears in the fourth paragraph of the syllabus.

—and joint torts—made in *Morris* v. *Woodburn, supra,* has recently been approved in *Maryland Casualty Co.* v. *Frederick Co.,* 142 Ohio St., 605, 611, 53 N. E. (2d), 795.

It is therefore concluded that since separate causes of action against several defendants appeared on the face of the petition, the demurrer should have been sustained.

Did the defendant waive the error by failing to renew his objection or in failing to move for an order requiring an election? If not waived, was the error so prejudicial as to require reversal?

The objection was properly and timely raised by demurrer. The order overruling the demurrer was not a final order from which an appeal could then be taken. Defendant was not, on its motion made at the end of plaintiff's case, entitled to a direction of a verdict in his favor or to a dismissal of the action upon the ground of misjoinder, but upon such motion he was entitled to an order requiring plaintiff to elect as between causes of action and defendants. *Sylvania Development Co.* v. *Start,* 25 Ohio App., 411, 158 N. E., 206.

Errors not assigned and therefore not determined by the intermediate reviewing court will not be considered by the Supreme Court. *Davis* v. *Hines,* 6 Ohio St., 473; *Randall* v. *Turner,* 17 Ohio St., 262; *Woodward* v. *Sloan,* 27 Ohio St., 592.

It may be inferred from these decisions that the error would be considered if assigned for determination in the intermediate court. See, also, *Crane Twp., ex rel. Salter, Pros. Atty.,* v. *Secoy et al., Twp. Trustees,* 103 Ohio St., 258, 262, 132 N. E., 851, 18 A. L. R., 979. Under the early practice, error in overruling a demurrer was held to be waived by thereafter proceed-

ing to trial. *Campbell* v. *Cowden*, Wright, 484; *Mitchell* v. *McCabe*, 10 Ohio, 405; *Sullenberger* v. *Gest*, 14 Ohio, 204; *Watson* v. *Brown*, 14 Ohio, 473.

However, in *Bartges* v. *O'Neil*, 13 Ohio St., 72, the Supreme Court held that the overruling of a demurrer to a petition which is legally insufficient because of misjoinder of two plaintiffs is prejudicially erroneous and constitutes ground for reversal, although thereafter an answer was filed, the case was tried, and trial resulted in judgment for the misjoined plaintiffs. The *Bartges case* holds also that, it not appearing from the record that the defendant might not have been prejudiced by the overruling of the demurrer, he is entitled to have the judgment reversed. This case was decided in 1861 at which time the first sentence of the present substantial justice statute—Section 11364, General Code—was in effect, that section having been enacted in 1853. The error in overruling the demurrer is analogous to an error of commission in a charge which is presumed to be prejudicial. *Cleveland Ry. Co.* v. *Kozlowski*, 128 Ohio St., 445, 191 N. E., 787. To require a defendant to stand on his demurrer for misjoinder and permit judgment to be taken against him in order to have a final order to test his demurrer, as was required under the old practice, imposes too harsh a burden upon a defendant who may think he is improperly joined with another. It is an entirely different situation from that of a party who takes a dismissal after the sustaining of a demurrer.

The substantial justice statute (Section 11364, General Code) is to be applied only where there has been a fair trial, and not as a means of avoiding the requirements of the law. *Knabb, Admr.,* v. *Scherer*, 45 Ohio App., 535, 187 N. E., 574; *Taylor* v. *Schlichter*, 118 Ohio St., 131, 160 N. E., 610; *H. E. Culbertson Co.*

v. *Wardin*, 123 Ohio St., 297, 175 N. E., 205; *Bush, Admr.*, v. *Harvey Transfer Co.*, 146 Ohio St., 657, 67 N. E. (2d), 851.

If the error is manifest and substantial, such as is present in the instant case, in order to certify that substantial justice has been done, it must affirmatively appear from the record that the error did not operate prejudicially to the defendant. *Bartges* v. *O'Neil, supra; Cleveland Punch & Shear Works Co.* v. *Consumers Carbon Co.*, 75 Ohio St., 153, 170, 78 N. E., 1009.

Under the law, the defendant company had the right to be tried alone. Although prejudice need not affirmatively appear (*Bartges* v. *O'Neil, supra*), a review of the evidence indicates that each of the defendants endeavored to shift responsibility for the loss to the other. This advantage to a plaintiff frequently appears in personal injury cases where two defendants are jointly liable. The demurrer should have been sustained, with leave to the plaintiff to file several petitions as provided by Section 11312, General Code. Upon the defendant's motion to direct a verdict upon the ground of misjoinder, the court should have ordered the plaintiff to elect with which of the two causes of action he desired to proceed. Because of these errors prejudicial to the defendant, the judgment should be reversed and the cause remanded for a new trial as against the defendant-appellant.